PHILLIP A. TALBERT
United States Attorney
ELLIOT C. WONG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-00152-DAD |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: JANUARY 24, 2023<br>TIME: 9:30 A.M.<br>COURT: Hon. DALE A. DROZD |
| RODERICK RIGMAIDEN, | |
| Defendant. | |

## I. INTRODUCTION

### A. Scope of Agreement.

The indictment in this case charges the defendant with violation(s) of 18 U.S.C. § 1341 – Mail Fraud (Counts 1-3); 18 U.S.C. § 1028A – Aggravated Identity Theft (Count 5); 18 U.S.C. § 1708 – Possession of Stolen Mail (Count 6); and 18 U.S.C. § 1704 – Possession of Mail Keys or Locks (Count 7). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to 18 U.S.C. § 1341 – Mail Fraud (Count 2); and 18 U.S.C. § 1028A – Aggravated Identity Theft (Count 5). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

      1.   Package Agreement:

The defendant acknowledges and understands that the plea offer made to him here by the government is a "package offer." That is, the defendant understands that the offer made to him is

conditioned on co-defendant Onjale Nettles pleading guilty according to the terms of her respective plea offer. The defendant understands that if this co-defendant declines, refuses or fails to plead guilty according to her respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea of guilty to the offer made to him by the government. Additionally, if co-defendant Nettles fails or refuses to enter her plea according to her respective offer and the defendant has already entered his plea, then this plea agreement is voidable at the option of the government. In its sole discretion, the government has the ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this defendant. However, the defendant's waiver of his rights under Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

Recognizing that this is a package offer, the defendant confirms that he has not been threatened, pressured, or coerced by any other person, including the co-defendant, to enter into this plea agreement. The defendant also confirms that he enters into this plea agreement voluntarily because he is in fact guilty of the offenses to which he is pleading guilty.

### B.     Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods of July 7, 2021 through June 28, 2022.

Defendant further agrees to pay at least $20,833 in restitution pursuant to 18 U.S.C. § 3663(a)(3) in connection with his scheme to fraudulently obtain funds from a federally-funded loan program.

The total amount of restitution will be between $20,833 and $250,000.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time

through all available means.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

### C.  Fine.

The parties agree that no fine is appropriate in this case.

### D.  Special Assessment.

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary, by participating in the Inmate Financial Responsibility Program. The defendant understands that his plea agreement is voidable at the option of the government if he fails to pay the assessment either immediately before the sentencing hearing or through the Inmate Financial Responsibility Program.

### E.  Violation of Plea Agreement by Defendant/Withdrawal of Plea.

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding

arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

F. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release

Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III. THE GOVERNMENT'S OBLIGATIONS

#### A. Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

#### B. Recommendations.

##### 1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range (including the application of the mandatory statutory minimum term) as determined by the Court.

##### 2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

PLEA AGREEMENT                                6

in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

### 18 U.S.C. § 1341 – Mail Fraud

(1) The defendant knowingly participated in, devised, or intended to devise, a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

(2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

(3) The defendant acted with the intent to defraud; that is, the intent to deceive and cheat;

(4) The defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

### 18 U.S.C. § 1028A – Aggravated Identity Theft

(1) The defendant knowingly transferred, possess, or used, without legal authority, a means of identification of another person or a false identification document;

(2) The defendant knew that the means of identification belonged to a real person; and

(3) The defendant did so during and in relation to a specific felony violation, to wit: mail fraud in violation of 18 U.S.C. § 1341.

The defendant fully understands the nature and elements of the crimes charged in the indictment

to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose on a violation of 18 U.S.C. § 1341 is 20 years of incarceration, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100. A violation of 18 U.S.C. § 1028A carries a mandatory two years' incarceration, consecutive to any sentence imposed on other counts, a fine of up to $250,000, or twice the gross gains or gross loss, whichever is greater, a one-year period of supervised release, and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further

understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.    Stipulations and Estimates Regarding Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following guidelines variables and therefore stipulate to the following:

1. Base Offense Level:  7 (§ 2B1.1(a)(1))
2. Loss Amount:  +10 (§ 2B1.1(b)(1)(F) – loss exceeds $150,000)
3. Victim enhancement:  +2 (§ 2B1.1(b)(2)(A) – involved 10 or more victims)
4. Authentication Feature Adjustment:  +2 (§ 2B1.1(b)(11))
5. Adjusted Offense Level:  21
6. Acceptance of Responsibility:  See paragraph III.B.2 above
7. Criminal History:  The parties estimate, but do not stipulate, that the defendant's criminal history category will be VI.

Consistent with the above, the parties estimate that the defendant's guideline range of imprisonment will be between 81 and 95 months, including a 24-month mandatory consecutive sentence under 18 U.S.C. § 1028A.

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines.

The defendant is free to make any arguments with respect to a variance from the guidelines under 18 U.S.C. § 3553(a). The government reserves its right to oppose any such variance and agrees to recommend a sentence at the low end of the applicable guideline range as determined by the Court.

## VII.    WAIVERS

**A.    Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

C. **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

D. **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed if he is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

A. **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

plead guilty as set forth in this plea agreement.

Dated: 1-9-2023

_____
MEGAN HOPKINS
Attorney for Defendant

B.  **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 1-9-2023

_____
RODERICK RIGMAIDEN
Defendant

C.  **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 1/10/23

PHILLIP A. TALBERT
United States Attorney

_____
ELLIOT C. WONG
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea(s)

Beginning no later than on or about July 7, 2021, and continuing to on or about June 28, 2022, in the County of Sacramento, State and Eastern District of California, and elsewhere, RIGMAIDEN and NETTLES, knowingly and with the intent to defraud executed and attempted to execute a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, half-truths, omissions, and the concealment of material facts. The purpose of the scheme was to obtain money and motor vehicles, which were fraudulently purchased from auto dealerships in the names of other persons whose identities had been stolen.

RIGMAIDEN and NETTLES stole mail from the U.S. mail system, through which they obtained identity information, identification documents, identification cards, access devices, and financial information belonging to real people and without their permission, including California Driver's licenses and identification cards. Under the falsely assumed identities of others, RIGMAIDEN and NETTLES fraudulently purchased motor vehicles from auto dealerships and obtained financing for those purchases. RIGMAIDEN, NETTLES, and other working with them and at their direction and control, typically accomplished motor vehicle purchases by providing a down payment in the form of an instrument that purported to be a check, cashier's check, or other monetary instrument, with the remainder of the purchase price secured by an auto loan. Typically, however, the monetary instrument presented for the down payment turned out to be false and fraudulent, and no payments were ever made toward the auto loans.

When authorities searched RIGMAIDEN and NETTLES's home in June 2022, they found numerous items bearing the names and identities of others, including the following: thousands of pieces of stolen mail; numerous checks, written and payable to other people; multiple California driver's licenses and ID cards; numerous credit and debit cards; several tax returns; multiple U.S. passports; a birth certificate and other vital records; a AAA card; and several license plates. Authorities also found at the home: a U.S. postal service uniform; a postal lock; key making equipment; a credit card imprinter; check stock; a notebook containing a list, in NETTLES' handwriting, of others' personal identifying information; an AR style assault rifle; and ammunition. On a computer in the home, authorities found fake and altered bank documents, utility bills, and several California driver's licenses and ID cards—including the fake California Driver's licenses in PERSON 1 and PERSON 2's names that RIGMAIDEN and/or NETTLES used in the above fraudulent car purchases. Authorities further found a mutilated postal key on RIGMAIDEN's person when he was arrested that same day.

In total, RIGMAIDEN, NETTLES, and others working with them and at their direction and control fraudulently purchased at least eight vehicles with the purchase prices totaling more than approximately $235,000.

**Counts 2 and 5 – Mail Fraud and Aggravated Identity Theft – 2020 Dodge Challenger**

On or about January 2022, RIGMAIDEN purchased a 2020 white Dodge Challenger from AUTO DEALERSHIP 2 in Walnut Creek, California, using the identity of PERSON 2 and a fake California Driver's License in PERSON 2's name. The total purchase price was approximately $66,561.28, supported by a loan fraudulently obtained in PERSON 2's name. At the time of the purchase and use of PERSON 2's means of identification, RIGMAIDEN knew that PERSON 2 was a real person.

Completing the purchase agreements for fraudulently obtained vehicles was an essential part of RIGMAIDEN's and NETTLES's fraud scheme. Incident to that essential part of the scheme, RIGMAIDEN caused a copy of the purchase agreement regarding the 2020 white Dodge Challenger to be sent by a commercial interstate carrier from Walnut Creek, California, to RIGMAIDEN's home in Sacramento, California on or about January 21, 2021, as alleged in Count 2 of the Indictment.

**2013 Black BMW**

In or around December 2021, RIGMAIDEN purchased a 2013 black BMW from AUTO DEALERSHIP 3 in Rancho Cordova, California, using the identity of PERSON 2 and a fake California Driver's License in PERSON 2's name that displayed RIGMAIDEN's photograph. The total purchase price was approximately $22,521.89.

**Defrauding a Federally-Funded Loan Program/Fraud Supporting Additional Restitution**

On April 20, 2021, RIGMAIDEN also fraudulently applied for a loan from a federally-funded loan program, in which he falsely claimed he was the owner and sole proprietor of a small business and needed a loan for his business' payroll expenses. In reality, this business did not exist. On April 27, 2021, RIGMAIDEN received $20,833 in fraudulently obtained funds.

*****

*I have read and carefully reviewed the Factual Basis above with my attorney. I agree that as it concerns my conduct it is correct. I also agree that if this matter proceeded to trial, the United States could establish each the facts contained within the Factual Basis beyond a reasonable doubt, and that those facts satisfy the elements of the offenses to which I am pleading guilty.*

Dated: 1-9-2023

RODERICK RIGMAIDEN
Defendant